UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ELSEVIER INC., et al.,

Plaintiffs,

26-cv-03689 (PKC)

-against-

OPINION AND ORDER

META PLATFORMS, INC., et al.,

Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiffs are several major book publishers and a famous author asserting claims under the Copyright Act alleging that Meta knowingly "torrented"[1] plaintiffs' copyrighted materials to train its large learning model ("LLM"), a generative artificial intelligence ("AI") platform. Plaintiffs also allege that Meta covered its tracks by removing the copyright management information ("CMI"), a violation of the Digital Millenium Copyright Act ("DMCA"). The action is brought as a putative class action against Meta Platforms, Inc. ("Meta") and its CEO Mark Zuckerberg.

Meta and Zuckerberg each move to transfer this action to the Northern District of California, where six actions against Meta are pending. These six actions assert substantially similar claims to the one pending before this Court.

The Court concludes that the first-filed rule applies, giving rise to a rebuttable presumption in favor of transfer. The Court has also balanced the convenience factors and

[1] "Torrent" is defined as "a protocol . . . that is used to distribute a large computer file . . . that has been segmented in small pieces between a large number of peer-to-peer users." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/torrent (last accessed September 24, 2026).

considered the interests of justice. 28 U.S.C. § 1404(a). For reasons that will be explained, the motions to transfer will be granted.

The Complaint in this Action

The present action (the "S.D.N.Y. Action") is brought by Elsevier Inc., Cengage Learning, Inc., Hachette Book Group, Inc., Macmillan Publishing Group, LLC, McGraw Hill LLC, who are publishers, and the author Scott Turow and his publishing company, S.C.R.I.B.E., Inc. Three of the seven plaintiffs are headquartered in New York. Defendant Meta is headquartered in Menlo Park, California, where defendant Zuckerberg's office is located.

Plaintiffs bring three claims of unlawful "reproduction" and one claim of unlawful "distribution" against Meta and Zuckerberg, and one claim of contributory infringement against Zuckerberg, all brought under the Copyright Act, 17 U.S.C. §§ 106(1), (3) & 501, and one claim against Meta for "removal and/or alteration of" CMI in violation of the DMCA, 17 U.S.C. § 1202(b).

The Complaint was filed in this District on May 5, 2026.

The Northern District of California Actions

Pending in the Northern District of California are six actions against Meta, principally asserting that Meta violated the Copyright Act by torrenting and removing CMI from the plaintiffs' copyrighted material to train its LLM: Kadrey v. Meta Platforms, Inc., 23-cv-03417 (VC) (filed Jul. 7, 2023),[2] Entrepreneur Media, LLC v. Meta Platforms, Inc., No. 3:25-cv-

[2] Kadrey is the result of a consolidation of three other complaints filed in the Northern District of California: Chabon v. Meta Platforms, Inc., 23-cv-04663 (VC), Huckabee v. Meta Platforms, Inc., et al., 23-cv-06663 (VC); Farnsworth v. Meta Platforms, Inc., 24-cv-06893 (VC).

09579 (VC) (filed Nov. 6, 2025), Carreyrou et al. v. Meta Platforms, Inc., 26-cv-03725 (VC) (filed Dec. 22, 2025),[3] Chicken Soup for the Soul, LLC v. Meta Platforms, Inc., 26-cv-02333 (VC) (filed Mar. 17, 2026), Cognella, Inc. v. Meta Platforms, Inc., No. 26-cv-04053 (VC) (filed May 4, 2026), and Sullivan et al. v. Meta Platforms, Inc. et al., No. 26-vc-06793 (VC) (filed Jul. 2, 2026) (collectively, the "N.D. Cal. Actions").

Plaintiffs in the N.D. Cal. Actions include published authors (Kadrey), a magazine publisher (Entrepreneur), a textbook publisher (Cognella), an LLC owner of book copyrights (Chicken Soup for the Soul), textbook authors (Sullivan), and other individual authors (Carreyrou). Five of the six N.D. Cal. Actions — all but Sullivan — were filed before the S.D.N.Y. Action was filed in this Court. One of the six N.D. Cal. Actions (Sullivan) names Zuckerberg as defendant.

Each of the N.D. Cal. Actions is assigned to the Honorable Vince Chhabria, U.S.D.J. Of these cases, Kadrey has advanced the most. In the Kadrey Fourth Amended Complaint, plaintiffs allege that Meta downloaded millions of pirated books through the bit torrent protocol and removed CMI from those books. (Kadrey, ECF 702 ¶¶ 90 & 107–113.)

Judge Chhabria granted summary judgment to Meta on some of the claims at issue, including its fair use defense, but the Judge emphasized that this was not an across-the-board ruling on all the claims against Meta before him:

> Given the state of the record, the Court has no choice but to grant summary judgment to Meta on the plaintiffs' claim that the company violated copyright law by training its models with their books. But in the grand scheme of things, the consequences of this ruling are limited. This is not a class action, so the ruling only affects the rights of these thirteen authors—not the countless others whose works Meta used to train its models. And, as should now be clear, this ruling does not stand for the proposition that Meta's use of copyrighted materials to train

[3] Carreyou does not allege a violation of the DMCA.

> its language models is lawful. It stands only for the proposition that these plaintiffs made the wrong arguments and failed to develop a record in support of the right one.
>
> ****
>
> In cases involving uses like Meta's, it seems like the plaintiffs will often win, at least where those cases have better-developed records on the market effects of the defendant's use.

Kadrey v. Meta Platforms, Inc., 788 F. Supp. 3d 1026, 1036–37, 1059 (N.D. Cal. 2025)

Kadrey remains a putative class action. The claims alleging violations of the Copyright Act by means of distribution remain pending, see Kadrey, 788 F. Supp. 3d at 1043. The DMCA claim relating to removal of CMI failed on partial summary judgment. (Kadrey, ECF 601.)

Section 1404(a) and the First-Filed Rule

District Courts may transfer an action to another district where the action might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." 28 U.S.C. §1404(a). There is no dispute that the S.D.N.Y. Action could have been properly brought in the Northern District of California. (ECF 72 at 15.) Meta is headquartered in Menlo, Park, California, which is located in San Mateo County and lies within the Northern District of California. As plaintiffs allege, Zuckerberg, CEO of Meta, maintains an office in Menlo Park. (ECF 1 at 8.)

Where two competing actions are pending in different districts, the first-filed action usually has priority. Employers Insurance of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271, 274–75 (2d Cir. 2008). The actions need not be identical; the parties and issues only need to be "substantially similar." Santana v. Cavalry Portfolio Services, LLC, 19-cv-3773 (PAE), 2019 WL 6173672, *3 (S.D.N.Y. 2019) (Engelmayer, J.) (citing Regions Bank v. Wieder

& Mastroianni, P.C., 170 F. Supp. 2d 436, 441 (S.D.N.Y. 2001) (Conner, J.); Castillo v. Taco Bell of America, LLC, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013)).

Plaintiffs assert that the core issues in the S.D.N.Y. Action include "[d]efendants' illegal torrenting and reproduction of Plaintiffs' works to train Meta's LLMs . . . ." (ECF 72 at 13.) The S.D.N.Y. Action and the N.D. Cal. Actions assert unlawful use of torrenting protocols in violation of the Copyright Act §§ 106(1) & 501. Compare (Entrepreneur, ECF 1 ¶ 62) ("Meta used torrenting protocols to download the Infringed Works from pirated sources.") with (Plaintiffs' Complaint, ECF 1 ¶ 1) ("[Meta and Zuckerberg] illegally torrented millions of copyrighted books and journal articles from notorious pirate sites.") The S.D.N.Y. Action and all but one of the N.D. Cal. Actions also allege a violation of section 1202(b) of the DMCA by deleting CMI from the pirated works. Compare (Entrepreneur, ECF 1 ¶ 74) ("Meta's removal or alteration of CMI was intentional and designed to prevent Llama from revealing that it was trained on copyrighted works[.]") with (Plaintiffs' Complaint, ECF 1 ¶ 228) ("Meta . . . intentionally removed and/or altered CMI from Plaintiffs' and the Class's copyrighted works . . . .") The Court concludes that the claims and their factual underpinnings of the S.D.N. Y. Action and the early filed N.D. Cal. Actions are substantially the same.

As noted, none of the N.D. Cal. Actions filed before the S.D.N.Y. Action named the CEO of Meta as a party defendant on a contributory infringement theory.[4] But this does not alter the conclusion that the first-filed actions are substantially similar. If it were otherwise, it would provide parties with a simple means to evade transfer under the first-filed rule. See

[4] Subsequent to the filing of the S.D.N.Y. action, the Sullivan action was filed in the Northern District of California naming Zuckerberg as a defendant on a contributory infringement claim. Compare (Sullivan, ECF 1 ¶ 126) ("Zuckerberg oversaw and directed Meta to undertake [copyright infringement violations.]") with (Plaintiffs' Complaint, ECF 1 ¶ 220) ("Zuckerberg actively encouraged Meta to download and distribute Plaintiffs' and the Class's copyrighted works by authorizing, approving, and/or directing Meta's illegal torrenting.")

Liberty Mutual. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (Koeltl, J.) ("[T]he existence of non-overlapping parties does not defeat application of the first-filed rule as long as some of the parties do overlap.")

The first-filed rule is not "an invariable mandate." Employers Insurance of Wausau, 522 F.3d at 275. "The inquiry still requires selection of the more appropriate forum, since the first-filed rule is only a 'presumption' that may be rebutted by proof of the desirability of proceeding in the second-filed forum." Id. (citation omitted).[5]

The convenience factors that should be balanced in arriving at an answer to whether the action ought to be transferred include "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006) (citation omitted).

1. Plaintiffs' Choice of Forum

Plaintiffs' selection of a forum is entitled to deference, even where the first-filed presumption applies. As noted, three of the seven plaintiffs are headquartered in this District. The other four plaintiffs are not principally located here.

[5] Special circumstances that amount to exceptions to the to the first-filed rule include improper anticipatory declaratory judgment actions, which is not a consideration here, and instances where "forum shopping *alone*" motivated the choice of forum. Employers Insurance of Wausau, 522 F.3d at 275–76. Here, forum shopping is not the apparent principal motivation.

Even though plaintiffs' selection of forum is entitled to deference, their selection of this District as the forum is entitled to somewhat less weight. Plaintiffs bring claims in a representative capacity on behalf of a nationwide class. The number of absent class members, if the class is certified, would vastly outnumber the number of class representatives. (ECF 1 at ¶ 169) ("Defendants have infringed many thousands of copyrights belonging to many members of the Class."). See In re Warrick, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("It is true . . . that the plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."); In re Bystolic Antitrust Litig., No. 20-CV-5735 (LJL), 2021 WL 148747, at *3 (S.D.N.Y. Jan. 15, 2021) (Liman, J.) ("Where, as here, a plaintiff has brought a class action, the plaintiff's choice of forum is accorded less weight."); Totilo v. Herbert, 538 F. Supp. 2d 638, 640 (S.D.N.Y. 2008) (Kaplan, J.) ("Where . . . the plaintiff sues on behalf of a putative class, the degree of deference accorded its choice is diminished.")

This factor tilts slightly in favor of the plaintiffs.

2. Location of Relevant Documents

The location of relevant documents and relative ease of access to sources of proof is a neutral factor given the ease with which electronic discovery may be transferred. See American Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (Sweet, J.) ("The location of documents and records is not a compelling consideration when records are easily portable." (citation and internal quotation marks omitted)).

With respect to the first fair use factor — whether Meta's commercial use is transformative — Plaintiffs' counsel acknowledged that, "[a] lot of that will come from discovery that's already been developed," referring to discovery already conducted in the N.D.

Cal. Actions. (ECF 99 at 20.) But he urges that the "market harm" discovery will come from New York because it is "the epicenter of the publishing industry." (Id. at 21.) Even so, the documentary evidence on harm, likely to be in electronic form, is also portable.

Thus, this factor is neutral in the analysis.

3. Convenience of the Parties

Meta's headquarters and Zuckerberg's office are in the Northern District of California, making that district more convenient for defendants. On the other hand, S.D.N.Y. is more convenient for the three plaintiffs whose headquarters are in the District. The Court accepts that Meta has a large New York presence and that Zuckerberg travels here from time to time.

Even so, the Court notes that, in the absence of transfer, there would be an inconvenience to Meta of facing claims in two geographically distant fora. For Zuckerberg, the inconvenience of litigating in two fora is modest during the discovery phase. But if this action proceeds to a lengthy jury trial, Zuckerberg would need to be present for some or all of the trial, 2,500 miles away from the headquarters of the company he leads as CEO.

The factor tilts slightly in favor of transfer.

4. Locus of the Operative Facts

At argument, Meta acknowledged that the so-called torrenting activity, downloading material while simultaneously uploading other material, took place in three locations: Menlo Park, New York and London. (ECF 99 at 10–11.) The individuals who made

the decision to acquire data sets by torrenting are or were based in Menlo Park, London, New York, and an unidentified location in France. (Id. at 12–13.) Both this District and the Northern District of California are loci of the operative facts. Other loci — the U.K. and France — are somewhat closer to this District.

Plaintiffs in the S.D.N.Y. Action allege that Zuckerberg, Meta's CEO whose office is in Menlo Park, was a "primary actor" in the copyright infringement. (Plaintiffs' Complaint, ECF 1 ¶ 39.) None of Zuckerberg's decisions or actions relevant to the merits of the claims are alleged to have occurred in New York.[6]

This factor tilts in favor of transfer.

5. Availability of Process to Compel Attendance of Unwilling Witnesses

According to Meta, 45% of its 53,810 U.S. full-time U.S. employees work out of offices in or work remotely from a location in the Northern District of California. (ECF 61 ¶¶ 6, 8.) Approximately 14% of their full-time U.S. office and remote employees are in the Southern District of New York. (Id. at ¶ 9.) Meta has come forward with a declaration identifying by name and title former employees in key positions related to AI; nine worked out of the Menlo Park or San Francisco offices, five worked in the New York City area, and one worked in Seattle. (Id. at ¶ 12.)

Based on discovery taken in the Northern District of California actions, plaintiffs identify seven New York-based witnesses associated with Meta who are key to their allegations. (ECF 72 at 12–13.) Four of them appear to be present employees and three are former employees believed to be living in the New York area. (Id.)

[6] To support their claim of personal jurisdiction over Zuckerberg, plaintiffs assert that Zuckerberg had authority and the power to direct "Meta employees in New York and elsewhere." (Plaintiffs' Complaint, ECF 1 ¶ 40.)

There is no claim that present employees could not be compelled (by the Court or their employer) to travel to either New York or San Francisco for trial absent some unique personal circumstance. Neither side claims to know whether an identified former employee would be willing to travel to trial in a distant location if his or her expenses were covered by either side.

The factor tilts slightly in favor of transfer because of the greater number of likely witnesses with a connection to the Northern District of California.

6. Relative Means of the Parties

Plaintiffs assert without contradiction that "Meta and Zuckerberg are among the wealthiest companies and individuals in the world." (ECF 72 at 25.)

The resources of plaintiffs are assumed to be much smaller but still are substantial: "Elsevier is a world leading provider of professional information solutions in the science, medical, and health sectors" (Plaintiffs' Complaint, ECF 1 ¶ 44); "Cengage's textbooks . . . are among the most popular and widely used titles in their fields" (Id. at ¶ 45); Hachette is the third-largest U.S. trade publisher" (Id. at ¶ 46); Elsevier, Hachette, and McGraw Hill are subsidiaries of public companies (ECF 6, 8 & 10); Macmillan and McGraw Hill assert that they are "leading" publishing companies or providers of education solutions (Plaintiffs' Complaint, ECF 1 ¶¶ 47–48); Scott Turow is a famous and respected author whose books have sold "more than 40 million copies worldwide." (Id. at ¶ 49.)

In terms of absolute financial resources, Meta's resources are substantially greater. But the resources of each side are sufficient for the needs of the litigation such that Meta's greater resources do not substantially weigh in favor of denying transfer.

This factor slightly favors plaintiffs.

7. Familiarity with a Jurisdiction's Law.

There is no issue of expertise in a particular jurisdiction's law. All claims asserted in the S.D.N.Y. Action arise under federal law.

This factor is neutral.

8. Overall Balancing and the Interests of Justice

Cases moved swiftly on Judge Chhabria's docket. Cognella was filed one day prior to the commencement of plaintiffs' action. Fact discovery has been completed, and summary judgment motions are expected to be heard in February 2027. (ECF 99 at 6–7) ("Entrepreneur and 3C [i.e., Carreyou, Cognella, Chicken Soup for the Soul] cases . . . have proceeded all the way through fact discovery . . . . Now the parties are about to serve their expert reports over the next couple of months. Immediately thereafter, summary judgment will be briefed and heard by Judge Chhabria in February of 2027.")

Judge Chhabria continues to receive related cases even after the filing of the S.D.N.Y. Action. Sullivan was filed on July 2, 2026, and reassigned to his docket by the end of the month. (Sullivan, ECF 29.)

Counsel for Meta has represented that, subject to agreement on a protective order and other protocols, its rolling production to plaintiffs will begin on October 12. (Id. at 20.) This will happen regardless of whether the transfer motion is granted, denied, or remains *sub judice*. (Id. at 31.) Therefore, there will be no prejudicial delay to plaintiffs' action by reason of transfer.

Inconsistent standards may be applied to the same course of conduct by Meta if the substantially similar S.D.N.Y. Action and N.D. Cal. Actions are litigated in two different fora.[7] This is not an instance where the potential transferor and transferee districts are in the same Circuit, reducing this risk. Cf. United States v. New York, No. 25-CV-3656 (PKC), 2025 WL 2208941, at *4 (S.D.N.Y. Aug. 4, 2025) .

Additionally, there is little danger of a diminished "intercourt dialogue." (ECF 99 at 28.) The development of copyright law in this area will have robust input from other judicial sources. In this District, for example, Judge Stein is presiding over coordinated multi-district proceedings regarding OpenAI's use of copyrighted material in training its LLM. In re OpenAI, Inc. Copyright Infringement Litigation, 25-md-3143 (SHS) (OTW) (S.D.N.Y.).[8]

A decision to transfer this action is not a usurpation of the role of the Judicial Panel on Multidistrict Litigation (the "JPML"). The JPML has described centralization as "the last solution" and notes that "transfer under Section 1404(a) — where appropriate — can result in a more streamlined action, without the procedural necessity of remand to the transferor court that is required under Section 1407." In re: Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig., 899 F. Supp. 2d 1378, 1379–80 (J.P.M.L. 2012). Transfer "allows for the possibility of consolidation of actions for trial, which potentially avoids the increased costs associated with multiple trials after the Panel remands actions to the various transferor courts once pretrial proceedings are concluded." Id. at 1380.

---

[7] In a different context, plaintiffs have expressed a similar concern. Plaintiffs argue their proposed class action is superior to individual actions because certification will minimize "the risk of inconsistent adjudication." (Plaintiffs' Complaint, ECF 1 ¶ 173.)

[8] The MDL includes claims against Microsoft, such as Bird v. Microsoft Corp., 25-cv-5282 (SHS) (S.D.N.Y.), which alleges that "Microsoft copied a massive trove of pirated books to train" its AI tool. (Bird, ECF 1 at 12.)

Taking into account the totality of the circumstances, the Court concludes that the presumption in favor of transfer premised upon the first-filed rule has not been overcome, and when considered with the convenience factors, the defendants have, by clear and convincing evidence, demonstrated that the balance tips in favor of transfer.

CONCLUSION

The motions to transfer this action to the United States District Court for the Northern District of California are GRANTED. The Clerk is respectfully requested to terminate the motions at ECF 59 & 60, transfer the action, and administratively close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 25, 2026